IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MATILDE YAMILEH ULLOA GOMEZ, *et al.* | * | |
| | * | |
| *On Behalf of Themselves* | * | |
| *and Others Similarly Situated* | * | |
| | * | |
| | * | |
| PLAINTIFFS, | * | |
| | * | |
| v. | * | Case No.: 8:19-cv-03398-PJM |
| | * | |
| CHIPOTLE SERVICES, LLC | * | |
| | * | |
| DEFENDANT. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**UNOPPOSED MOTION AND MEMORANDUM FOR CERTIFICATION OF CLASS ACTION AND PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

Come now Plaintiffs, Matilde Yamileh Ulloa Gomez, Laura V. Purca, Abigail Guzman Rivas, Kevin Alexis Rivas Cornejo, Yessica Magaly Espinoza Canas, and William Velasquez, on behalf of themselves and those similarly situated, and file this Unopposed Motion for Certification of a Class Action and Preliminary Approval of Settlement Agreement. As grounds therefore, Plaintiffs state as follows:

**I.   PRELIMINARY STATEMENT**

The parties have entered into a Settlement Agreement that seeks to resolve and release the claims and potential claims of the Plaintiffs and the putative class against Defendant. Rule 23(e) of the Federal Rules of Civil Procedure governs settlements of class action lawsuits. It provides that a "class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Therefore, the parties seek certification of a class action and preliminary approval of their settlement agreement.

Subject to Court approval, the parties have settled the present case against defendant, Chipotle Services, LLC ("Chipotle" or "Defendant") for $300,000.00 ("Gross Settlement

Amount"). The proposed settlement resolves all claims alleging that Defendant failed to pay all wages due in violation of the Maryland Wage and Hour Law (MD § 3-501, *et seq*.) ("MWHL") and the Maryland Wage Payment and Collection Law (MD, Labor and Employment Article §§ 3-501 *et seq*.) ("MWPCL").  This settlement resolves all the claims in the lawsuit or claims that could have been asserted in the lawsuit on the same facts and satisfies all of the criteria for preliminary approval.

In addition, as set forth herein, the parties agree that the Federal Rule 23 Class should be certified for settlement purposes.  Accordingly, Plaintiffs respectfully request that the Court: (1) preliminarily certify the class for settlement purposes only, (2) preliminarily approve the settlement reached by the parties as embodied in their Settlement Agreement, attached hereto as Exhibit A;  (3) approve the Notice to Rule 23 Class of Proposed Settlement of Class Action Lawsuit ("Proposed Notice"), attached hereto as Exhibit B; (4) approve Michael K. Amster as Class Representatives of the Class.  (In support of this motion, the declaration of Plaintiffs' counsel, Michael K. Amster, is attached hereto as Exhibit C; and (5) instruct the parties to appear for a Fairness Hearing on a date approximately seventy-five (75) days from the date of the Preliminary Approval Order.   Defendant does not oppose this motion.

## II.  STATEMENT OF FACTS AND CASE BACKGROUND

Chipotle is a Limited Liability Company (LLC) with one member, Chipotle Mexican Grill, Inc. Chipotle Mexican Grill, Inc. is incorporated under the laws of the State of Delaware with headquarters in Newport Beach, California.  Chipotle owes and operates numerous restaurants throughout the United States.  However, Plaintiffs and the putative class were all employed at the restaurant located at 564 North Frederick Avenue, Gaithersburg, Maryland ("Gaithersburg Chipotle").

Plaintiffs and the putative class were employed at Gaithersburg Chipotle in the capacities of "crew member," "kitchen manager," and "service manager" at various times during the relevant period. During the period of Plaintiffs' employment, Defendant paid Plaintiffs and other similarly situated "crew members," "kitchen managers," "service managers" and related hourly employees employed by Defendant at Defendant's Gaithersburg Chipotle Restaurant ("the Wage Class") as hourly employees.

Plaintiffs allege that, in Defendant's employment at the Gaithersburg Chipotle Restaurant, a former Chipotle employee employed in the capacity of a "general manager" ("GM") (1) required Plaintiffs and members of the Wage Class to perform work duties without allowing Plaintiffs and the members of the Wage Class to first sign in as well as (2) requiring Plaintiffs and the members of the Wage Class to perform work duties after the GM required Plaintiffs and the members of the Wage Class to sign out for the work day. This generally took place during the afternoon and night shifts. The GM was employed with Chipotle at the Gaithersburg Chipotle from roughly June 1, 2017 to August 31, 2019 (hereinafter the "Relevant Period"). During the Relevant Period, 153 individuals employed at the Gaithersburg Chipotle, including Plaintiffs, worked at least one afternoon or night shift. Defendant's failure to pay Plaintiffs and members of the Wage Class all wages due violated the Maryland Wage and Hour Law, Maryland Code Annotated, Labor and Employment Article §§ 3-401 *et seq.* ("MWHL") and the Maryland Wage Payment and Collection Law, Maryland Code, Labor and Employment Article §§ 3-51 *et seq.* ("MWPCL").

On September 19, 2019, Plaintiffs filed a class action lawsuit against Defendant in the Montgomery County Circuit Court. This action was removed to the United States District Court for the District of Maryland. From November 2019 until May 2020, Plaintiffs and Defendant engaged in earnest settlement negotiations. The parties engaged in significant informal discovery,

whereby Defendant provided Plaintiffs with their class-wide time and pay records. Defendant also retained an expert that conducted a forensic analysis of the putative class's damages. Undersigned Counsel audited Defendant's records and compared them to the records in its possession. Together, the parties calculated the number of employees affected by Chipotle's pay practices during the Relevant Period and estimated amount of unpaid wages owed to each such employee.

The parties determined that Gaithersburg Chipotle employed 153 individuals that worked at least one afternoon or night shift. For the purpose of settlement, the parties estimated that each individual was shorted one hour for each night shift they worked and 5.4 minutes for each afternoon shift they worked. The parties agreed that, with the Court's approval, Defendant would pay each such individual their full hourly wage plus an equal amount of pay as liquidated damages for each amount unpaid. This totals $116,460.82. Separate and apart from this amount, the parties agreed that Defendant would pay each named plaintiff in the lawsuit an incentive bonus of $10,000.00 in exchange for a full, general release of all claims (including known and unknown) against Defendant. Additionally, separate and apart from these amounts, Defendant agreed to pay all attorney fees - $105,000.00 - and litigation administrative costs - $18,539.18. Finally, the parties agreed that, in addition to paying the Gross Settlement Amount, Defendant would pay the employer's payroll taxes.

### III. THIS COURT SHOULD CERTIFY AND APPROVE THE SETTLEMENT OF THE PARTIES' CLASS ACTION SETTLEMENT

The procedure for review of a proposed class action settlement is well-established. The first step is that the court reviews the proposed settlement to determine whether it "is 'within the range of possible approval' or, in other words, whether there is 'probable cause' to notify the class of the proposed settlement." *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citations omitted). The second step is for the court, after the notice

period, to hold the final approval hearing – the fairness hearing – and determine whether the settlement should be finally approved. *Id.*; *see also* Fed. R. Civ. P. 23(e). For preliminary approval, the Court should examine whether there is a probability that the settlement could be finally approved, warranting notification to the class. *Horton*, 855 F. Supp. at 827.

At this preliminary stage of the proceedings, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Domonoske v. Bank of Am., N.A*., 2010 U.S. Dist. LEXIS 7242 at *48-49 (W.D. Va. Jan. 27, 2010), quoting Manual for Complex Litigation (Fourth) § 21.632 (2004).

### A. The class should be conditionally certified under Rule 23(b)(3).

#### 1. Fed. R. Civ. P. 23(a)

A court can certify a settlement class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the four prerequisites in Fed. R. Civ. P. 23(a) – numerosity, commonality, typicality and adequacy of representation – and one of the three requirements of Fed. R. Civ. P. 23(b). The existence of "a potential settlement is a relevant consideration when considering class certification. 'If not a ground for certification per se, certainly settlement should be a factor, and an important factor, to be considered when determining certification.'" *Temp. Serv., Inc. v. Am. Int'l Groups, Inc*., 2012 U.S. Dist. LEXIS 86474, *3 (D.S.C. June 22, 2012) *quoting, In re A.H. Robins Co., Inc*., 880 F.2d 709, 740 (4 Cir. 1989) abrogated by *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

In the present case, the putative class squarely falls within the requirements of Rule 23(a). Plaintiffs address each of these points in turn.

    i.    *Numerosity*

5

Regarding the first factor, the putative class of 153 employees is sufficiently numerous so that joinder of all members would be impracticable. *See, e.g., King Drug Co. of Florence v. Cephalon, Inc.*, 309 F.R.D. 195, 214 (E.D. Pa. 2015) ("when the twenty-two class members have identical claims, a class action would achieve economies of time, effort, and expense without bringing about undesirable results."); *In re Modafinil Antitrust Litig.*, 837 F.3d 238 (3d Cir. 2016) (certifying class of 22 individuals); *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D.Md. 1997) (observing that a class size of 25 to 30 members raises a presumption that the numerosity requirement is met).

In the present case, it would be impractical to join 153 individuals whose claims are virtually identical. Additionally, given the transient nature of the fast-casual restraint industry, many of the individual's claims are comparatively small.

    ii.    *Commonality*

Regarding commonality, questions of fact are very similar in the present case. Plaintiffs' claims arose while working under Chipotle's GM that engaged in a scheme to compel employees to work off-the-clock, both before and after they clocked-in. While there may be variations in the exact amount of time that each employee worked, the parties collectively agreed, for the purpose of settlement, that for each night shift, the employee was compelled to work off-the-clock for one hour, and for each afternoon shift, the employee was compelled to work for off-the-clock for 5.4 minutes. Additionally, questions of law are identical amongst the putative class. The claim in simply based on unpaid wages under the MWHL and MWPCL. The only nuance in the individual's claims is that some individuals have wages owed for work done over forty and some do not. However, this was easily accounted for because those hours were calculated at the employees' overtime rate, rather than regular rate.

    iii.    *Typicality*

Additionally, the representative parties are typical of the claims of the class. The named Plaintiffs worked in diverse positions at the Gaithersburg Chipotle covering all times during the Relevant Period. The violation Plaintiffs claim is identical to the violation suffered by the other putative class members. Namely, that they were required to work off-the-clock. Some of the named Plaintiffs may have worked more or less shifts than other putative class members. However, this difference is accounted for in the parties' proposed settlement agreement, which ties the compensation to the number of shifts that each employee worked.

    *iv.*    *Adequacy of representation*

Finally, as is evidenced by the Settlement Agreement, the representative parties have, and will continue to fairly and adequately protect the interests of the class. The named Plaintiffs have a clear understanding of the issues in this case and have been involved in the litigation. They have assisted in developing the facts, have communicated regularly with their counsel, and have and will continue to take a very active role in this litigation.

No conflict exists between the named Plaintiffs and the settlement class members. The representative parties successfully negotiated a resolution that provided the putative class with more than 100 percent of their unpaid wages calculated using the formula set forth in the Settlement Agreement. The settlement formula is neutral to the interests of all class members, and is based on a concrete method that is fair to all members of the putative class. The common goal is to recover as much money as possible for the Plaintiffs, to make them all whole. Thus, there is no antagonism between the named Plaintiffs and the class.

    **2. Fed. R. Civ. P. 23(b)**

In addition to meeting the requirements of Rule 23(a), the proposed class must also fall within one of the three circumstances provided in Rule 23(b) for class certification to be proper.

One of those circumstances is that a class may be maintained where the court finds that common questions of law or fact among the parties predominate over individual questions and that a class action is therefore the best available method for adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority. Rule 23(b)(3) applies in this case.

Common questions of law and fact predominate over individual questions in this case. Plaintiffs do not allege any special conduct related to certain individuals.  As set forth above, Plaintiffs' claims arose while working under Chipotle's GM that engaged in a scheme to compel employees to work off-the-clock, both before and after they clocked-in.  While the exact number of hours wrongfully withheld from each individual can never been fully confirmed, any differences in the individual class members has been resolved by using a neutral formula to determine each individual's award and using each individual's wage and hour data regarding the number of relevant shifts each individual worked and the regular rate of each such individual.

Because the Court is asked to certify this action for settlement purposes only, it need not determine whether the Class would be manageable for litigation purposes in order to approve the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems," under Fed. R. Civ. P. 23(b)(3)(D). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248, 138 L. Ed. 2d 689 (1997).  In the present case, however, it would be impractical to join 153 individuals whose claims are virtually identical and have discovery repeatedly litigated in this Court.  Additionally, given the transient nature of the fast-casual restraint industry, many of the individual's claims are comparatively small.  The average award is only $761.18, with many of the individual claims even smaller.  Next, given that there are no obvious records of off-the-clock

work, there is a significant possibility that, if these claims were brought separately, there would be widely inconsistent outcomes. Finally, Plaintiffs would face real risks if the case proceeded with litigation. Specifically, while Plaintiffs believe that their claims have been asserted in good faith and have merit, they also recognize that Defendant has mounted considerable defenses to liability and damages. As such, Plaintiffs may face significant risk to their chances for class-wide recovery, or any recovery per se, if this case were to proceed without preliminary approval from the Court.

### B. The Settlement is fair and adequate and should be approved.

The Fourth Circuit has articulated two factors that govern whether a proposed settlement conforms to the requirements of the Federal Rules at the preliminary approval stage – fairness and adequacy. *In re Jiffy Lube Sec. Litig.,* 927 F.2d. 155, 158-159 (4th Cir. 1991).

#### 1. Fairness

In order to determine whether a proposed settlement is fair to the parties, courts consider: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel [.]" *Id.* In assessing a proposed class action settlement, "a presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small." *Brunson v. Louisiana-Pacific Corp.*, 818 F. Supp. 2d 922, 927 (D.S.C. 2011) *quoting* Newberg & Conte, Newberg on Class Actions (3d ed. 1992) § 11.41. *See also M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) (presumption of fairness attaches to the proposed settlement if the settlement is "reached after meaningful discovery [and] after arm's length negotiation [] conducted by capable counsel").

Prior to and during the course of this litigation, Plaintiffs' counsel conducted an extensive investigation relating to the class claims and the underlying events and transactions alleged in the Complaint. While this litigation did not reach the stage of discovery on the merits, the parties engaged in significant informal discovery, whereby Defendant provided Plaintiffs with their class-wide time and pay records. Defendant also retained an expert that conducted a forensic analysis of the putative class's damages. Undersigned counsel audited Defendant's records and compared them to the records in its possession. Together, the parties calculated the number of employees affected by Chipotle's pay practices during the Relevant Period and estimated amount of unpaid wages owed to each such employee.

Here, the proposed Class Action Settlement readily satisfies the "fairness" standard for preliminary approval. The Plaintiffs, on behalf of themselves and the putative Class, agreed to the terms of the Class Action Settlement Agreement after protracted negotiation and thorough evaluation of (a) the substantial benefits a Settlement Class would receive as a result of the settlement, if approved, (b) the risks of protracted litigation in this case, (c) that continued pursuit of the class claims would involve substantial uncertainties, delays, and other risks inherent in litigation such as potentially dispositive arguments presented by Defendant that poses a significant risk to their chances for class-wide recovery, or any recovery per se, and (d) the desirability of permitting the settlement to be consummated as provided by the terms of this Settlement Agreement in the context of the overall global settlement and the benefits thereby accruing to the putative class members. Plaintiffs and their counsel, after these extended discussions and arm's-length negotiations believe the settlement represents the best relief possible consistent with the interests of the Plaintiffs and the putative class.

Furthermore, proposed class counsel has extensive experience and qualifications in this area. Undersigned counsel has litigated a considerable number of plaintiff-side wage and hour cases. He served as class counsel in the case of *McFeeley et al. v. Jackson Street Entertainment, LLC*, in the U.S. District Court of Maryland, where Plaintiffs were granted collective action certification and, after a jury trial, awarded $265,276.50 in unpaid wages and liquidated damages and $173,442.28 in attorney fees and costs. This case was appealed to the Fourth Circuit and affirmed. Undersigned served as class counsel in *James Lewis, et al. vs. Investigative Consulting & Services, Inc. et al*, where Plaintiffs were granted class certification and settled the case for $369,438.43. C-03-CV-19-000211, Baltimore County Circuit Court. Undersigned served as class counsel in *Manfredo Alexander Zelaya Diaz vs. Joe's Auto Detail, LLC*, where Plaintiffs were granted class certification and settled the case for $200,000.00. C-03 -CV-19-002691, Baltimore County Circuit Court. Undersigned counsel has served as class counsel in numerous additional cases which were certified as collective actions, including: *Vargas et al. v. TLJ, Inc. et al*., 1:14-cv-02188, in the U.S. District Court of Maryland, and *Ruiz, et al. v. Monterey of Lusby, Inc. et al*. 1:13-cv-3792, in the U.S. District Court of Maryland. Undersigned Counsel served as lead Plaintiff's counsel in the case of *Rodriguez v. Adams Restaurant Group, Inc. et al.*, 1:16-cv-00977, in the United Stated District Court of the District of Columbia, where, after a jury trial, the Plaintiff was awarded $179,459.88 in unpaid overtime and liquidated damages and $301,072.82 in attorney fees and costs. (Ex. C.) Accordingly, the factors relating to fairness of the proposed settlement amply demonstrate that the settlement falls within the range of possible final approval.

    **2. Adequacy**

Through the evidence developed in this matter, undersigned counsel's review of Defendant's production, and legal research conducted on matters such as such as class certification

11

risk, factually similar cases, summary judgment risks, risks attendant to off-the-clock litigation, Defendants' anticipated defenses, and Plaintiffs' and the putative Class's damages, Class Counsel was able to fully assess Plaintiffs' expected damages and litigation risks related to proceeding as a class action. These factors demonstrate that the proposed settlement is adequate.

In determining whether the proposed settlement is adequate, relevant factors to consider include: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159. In analyzing these factors, "[t]he voluntary resolution of litigation through settlement is strongly favored by the courts" and is "particularly appropriate" in class actions. *South Carolina Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990).

To determine the strength of Plaintiffs' case, Defendant's anticipated defenses, and Plaintiffs' damages, undersigned counsel closely reviewed the class-wide time records, compared those records to Plaintiffs' records, and had countless telephone calls and in-person meetings with the named Plaintiffs.

Defendant produced, and undersigned counsel reviewed, relevant documents for the putative class, including tens of thousands of sign-in and sign-out entries of the putative class during the relevant period. This information was gathered from Defendant's timekeeping system and provided in an excel database that contained the payroll records for each class member for every week worked during the relevant period. Undersigned counsel compared the wage and hour data to the data of the named Plaintiffs, which was already in his possession.

Undersigned counsel also closely reviewed this information with the named Plaintiffs. During such meetings, Plaintiffs discussed the nature and extent of the off-the-clock work performed and the times when such off-the-clock work was performed. Undersigned counsel also interviewed a non-party witness to Defendant's off-the-clock work scheme.

Through the review of the database, undersigned counsel determined that the records accurately indicated each putative class members' shift and their hourly rate. Additionally, based on the information provided by the named Plaintiffs and a non-party witness, undersigned counsel determined that the off-the-clock work generally occurred under a single GM from roughly June 1, 2017 to August 31, 2019. Undersigned counsel also determined that the vast majority of the uncompensated work occurred during the night shifts. Additionally, undersigned counsel determined that some uncompensated worked occurred during the afternoon shifts, and the uncompensated work during the morning shifts was de minimis.

In an off-the-clock case such as the present one, there exists unique problems with proving the amount of damages. No records exist to prove the amount of damages. Furthermore, unlike the Fair Labor Standards Act, which contains a record keeping requirement and a shifting burden scheme in the event that an employer has failed to maintain proper records (*see Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)), no such requirement exists under the MWHL. *See* MD § 3-501, *et seq*. Obviously, settling this matter early would provide Plaintiffs and the putative class with relief without the time and expense of protracted litigation. Finally, while Plaintiffs believe that their claims have been asserted in good faith and have merit, they also recognize that Chipotle has mounted considerable defenses to liability and damages. Even if Plaintiffs were to succeed on proving off-the-clock work, they would nonetheless need to prove that Defendant had actual or constructive knowledge of such time worked by them. These burdens pose a significant

risk to their chances for recovery, or even a class-wide recovery. Based on the foregoing, the settlement is clearly adequate and within the range of possible final approval.

### C.  The Parties have stipulated to the class representative and class counsel

Plaintiffs propose and the Defendant agree that the named Plaintiffs be designated the Class Representants for the Class Members (hereinafter referred to as the "Class Representatives"), and Michael Amster of Zipin, Amster & Greenberg, LLC be designated as class counsel for the Class Members (hereinafter referred to as "Class Counsel"). (*See* Ex. C regarding qualifications of attorney Michael K. Amster.)

### D.  Notice to Class Members

Plaintiffs propose and the Defendant agrees that the proposed Notice, attached hereto as Exhibit B, shall be sent to each Class Member. The proposed Notice provides a detailed explanation of all claims. The Notice also sets forth the manner in which the Class Members can opt-out of the class action or submit objections to the settlement. Finally, the Notice will set forth the total amount of the settlement funds as well as the attorneys' fees and costs sought by Plaintiffs' counsel. The proposed Settlement, therefore, provides for sufficient notice to be sent to each Class Member within 5 days of the Court's preliminary approval of the class for settlement purposes. Notice to the Class shall be provided by JND Class Action Administration, per the terms of the Settlement.

### E.  Exclusions and Objections

As set forth in the proposed Notice and the Settlement Agreement, the Class Members will be permitted to exclude themselves from the class by submitting the Opt-Out Form attached to the Proposed Notice. (Ex. B.)  Under the Agreement, in order to validly exclude oneself from the Class and this Settlement (i.e., to validly opt out), Class Members who choose to opt-out of the

14

settlement must mail via First Class United States Mail a written, signed statement to the Settlement Administrator that states he or she is opting out of the settlement and include his or her name, address, and telephone numbers and statement indicating his or her intention to opt-out such as: "I opt out of the wage and hour settlement." ("Opt-out Statement"). The end of the time period to opt-out of the settlement ("Opt-out Period") shall be forty-five (45) days after the Notices are mailed. Re-mailed notices will also have a thirty (30) day response period, so long as the total response period does not exceed seventy-five (75) days. To be effective, an Opt-out Statement must be timely.

Additionally, the Settlement Agreement and Notice also provide the Class Members with a means to object to the fairness of the Settlement Agreement. To do so, the person making the objection must not submit a request for exclusion (i.e., must not opt out), and should their objection in writing. To be considered, such statement must be mailed to Class Counsel via First-Class United States Mail post-marked before the end of the Opt-out Period. The statement must include all reasons for the objection, and any supporting documentation. Class Counsel will retain the original and send copies of each objection and supporting documents to Defendant's Counsel by email delivery no later than five (5) days after receipt of the objection. Finally, any Class Member who does not file a valid and timely objection to the settlement should be barred from seeking review of the settlement or appeal any decision.

### F. Attorneys' Fees

Preliminary approval of the Settlement is further supported by the fact that Plaintiffs' counsel's request for attorneys' fees is fair and reasonable. If the Court grants the parties' requests, the total settlement fund would total $300,000.00. Plaintiffs' counsel proceeded in this matter on a contingency basis without any guarantee that they would receive any payment for their time and effort. Accordingly, Plaintiffs' counsel seeks an attorneys' fee award of $105,000.00, which equals

thirty-five percent of the entire settlement amount.

The U.S. Supreme Court has held that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. VanGemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749 (1980). The rationale for this approach is to avoid unjust enrichment of the class members for the work done that benefited them. Courts in the Fourth Circuit commonly use the "percentage of recovery" method of awarding attorney fees in common fund settlements such as this. *See Decohen v. Abbasi , LLC,* 299 F.R.D. 469, 481 (D. Md. 2014) ("District courts in the Fourth Circuit, and the majority of courts in other jurisdictions, use the percentage of recovery method in common fund cases."); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 682 (D. Md. 2013) (acknowledging that the percentage of recovery method it commonly used in the Fourth Circuit). An attorney may seek fee calculated as a percentage of the fund method in fee shifting cases. *Fresno Cnty. Emples. Ret. Ass'n v. Isaacson*, 925 F.3d 63, 68 (2d Cir. 2019) ("even when statutory fees and the common-fund doctrine collide, the common-fund doctrine operates autonomously from fee-shifting principles."). This is true even when that calculation would lead to fees greater than the lodestar method. *Id.* ("Notably, an unenhanced lodestar fee does not account for the contingent risk that a lawyer may assume in taking on a case.")

Courts regularly approve attorney fee awards ranging between 30 to 40 percent of the settlement fund. *See e.g.,* Final Order and Judgment at 6, *Bradshaw v. Hilco Receivables, LLC.,* 1:10-cv-00113-RDB (D. Md. 2012) ECF. No. 74 (approving contingency fee of 40%); Final Order and Judgment at 5-6, *Veiga v. Suntrust Bank,* No. l:09-CV-02815, PWG 2011 (D. Md. Feb. 23, 2011) ECF No. 46 (approving contingency fee of 40%); Final Order and Judgment at 5, *Baker v. Sunshine Fin. Grp., LLC.,* 11-02028-PWG (D. Md. Oct. 26, 2012),

ECF No. 34 (approving contingency fee of 40%); Final Order and Judgment at 5, *Tyeryar v. Main St. Acquisition Corp.,* 11-00250-CCB (D. Md. Jan. 24, 2012), ECF No. 24 (approving contingency fee of 40%); Final Order and Judgment at 5, *Johnson v. Midland Funding, LLC.,* 09-2391-ELH, (D. Md. Mar. 10, 2011), ECF No. 41 (approving contingency fee of 39%). A thirty-five percent recovery is in the middle range of class action recoveries. Additionally, unlike most settlements, the percentage *excludes* Defendant's settlement administration costs, which are being paid directly. For the reasons set forth above, the requested fee of $105,000.00 is reasonable.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court: (1) preliminarily certify the class, (2) preliminarily approve the settlement reached by the parties as embodied in their Settlement Agreement; (3) approve the Proposed Notice; (4) approve Michael K. Amster as Class Counsel; and (5) instruct the parties to appear for a Fairness Hearing on a date approximately seventy-five (75) days from the date of the Preliminary Approval Order.

Respectfully submitted,

_____/s/_____
Michael K. Amster, Esq.
Bar No. 18339
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Phone: 301-587-9373
Fax:  240-839-9142
mamster@zagfirm.com

*Counsel for Plaintiffs/
Putative Class Members*