# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MATILDE YAMILEH ULLOA GOMEZ, LAURA V. PURCA, ABIGAIL GUZMAN RIVAS, KEVIN ALEXIS RIVAS CORNEJO, YESSICA MAGALY ESPINOZA CANAS, WILLIAM VELASQUEZ, <br><br>*On Behalf of Themselves and Others Similarly Situated* <br><br>Plaintiffs, <br><br>v. <br><br>CHIPOTLE SERVICES, LLC, <br><br>Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : CASE NO.: 8:19-cv-03398-PJM <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiffs Matilde Yamileh Ulloa Gomez, Laura V. Purca, Abigail Guzman Rivas, Kevin Alexis Rivas Cornejo, Yessica Magaly Espinoza Canas, and William Velasquez (the "Named Plaintiffs"), as well as all Class Members (as defined below) and by Defendant Chipotle Services, LLC ("Defendant" or "Chipotle") (Defendant or Chipotle and Named Plaintiffs collectively referred to as the "Parties").

1. **RECITALS AND BACKGROUND**

WHEREAS, the Named Plaintiffs filed a Complaint in the Circuit Court of Maryland for Montgomery County against Defendant, on behalf of themselves and others similarly situated, for unpaid wages, liquidated damages, and attorney's fees and costs pursuant to the Maryland Wage Payment and Collection Law ("MWPCL") and the Maryland Code, Labor and Employment Article §§ 3-501 *et seq.* (the "Action");

WHEREAS, the Action was subsequently removed to the United States District Court for the District of Maryland;

WHEREAS, prior to moving for certification of the Action as a collective action pursuant to 29 U.S.C. § 216(b) and a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Motion") with respect to the Class (as defined below), the Parties engaged in informal discovery in an attempt to reach a settlement;

1

WHEREAS, the Parties have engaged in numerous and protracted settlement negotiations to arrive at the settlement described herein;

WHEREAS, Defendant (as defined below) denied and continues to deny all of the allegations made by Named Plaintiffs in the Action and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Action. Nonetheless, solely for the purpose of settling this Action, and without admitting any wrongdoing or liability, Defendant agrees to settle the Action on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Action;

WHEREAS, the purpose of this Agreement is to settle fully and finally all wage and hour claims between the Named Plaintiffs, the Class Members, and Defendant for all claims asserted in the Action in order to avoid the burden, expense, and uncertainty of continuing the Action; and

WHEREAS, Class Counsel analyzed and evaluated the merits of the claims made against Defendant and the impact of this Agreement on the Named Plaintiffs and Class Members and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Action, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years. Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Named Plaintiffs and Class Members.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Action on the following terms and conditions:

## 2. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

2.1 **"Action" or "Litigation."** The Action or Litigation shall mean the above referenced case initially filed the Circuit Court of Maryland for Montgomery County (Case No. 472550-V) and subsequently removed to the United States District Court for the District of Maryland (Case No. 8:19-cv-03398).

2.2 **"Agreement."** Agreement means this Settlement Agreement and Release.

2.3 **"Claimant."** "Claimant" shall mean those Class Members who are eligible to receive a Settlement Check because they chose not to opt out of the settlement. Claimants acknowledge that they agree to settle and release all wage and hour claims.

2.4 **"Class" or "Class Member(s)."** Class or Class Members shall be defined as: all present and former persons employed by Chipotle at its restaurant located at 564 N. Frederick Avenue, Gaithersburg, Maryland 20877 (the "Gaithersburg Restaurant") from June 1, 2017

2

to August 31, 2019 (the "Class Period") who were nonexempt and received pay on an hourly basis.

2.5 **"Class Counsel" or "Plaintiffs' Counsel."** Class Counsel or Plaintiffs' Counsel shall mean Michael K. Amster, Esq., Zipin, Amster & Greenberg, LLC, 8757 Georgia Avenue Suite 400, Silver Spring, Maryland 20910.

2.6 **"Class Member List."** The Class Member List shall mean a listing of Class Members by (i) name; (ii) last known address; (iii) dates of employment; (iv) social security numbers, if available;[1] (v) employee ID numbers; (vi) job title; (vii) employment status; (viii) dates of employment; (ix) hourly pay rate; and (x) number and type of shifts (i.e., day or night) worked based on the clock-in and clock-out times during the Class Period. The Class Member List will be contained in a confidential document that Defendant shall provide to Class Counsel pursuant to the Protective Order granted by the Court on February 19, 2020. The amount owed to individual Class Members shall be calculated/determined by Class Counsel based on the data provided by Defense Counsel. Defense Counsel has provided all data and information reasonably necessary to make these calculations and determinations. The Class Member List is to be used by Class Counsel and the Settlement Administrator to effectuate settlement, and may not be copied, disseminated, or used for any other purposes other than those included in this Agreement.

2.7 **"Class Period."** The Class Period shall mean the period from June 1, 2017 to August 31, 2019.

2.8 **"Court."** The Court shall mean the United States District Court for the District of Maryland, and specifically Judge Peter J. Messitte.

2.9 **"Days."** Days shall mean calendar days.

2.10 **"Defendant."** The Defendant, for the purposes of the settlement, is the named defendant in the Complaint, Chipotle Services, LLC.

2.11 **"Defense Counsel."** Defense Counsel are Elizabeth Bulat Turner, Esq. and Hee Won Choi, Esq., Martenson, Hasbrouck & Simon, 2573 Apple Valley Road NE, Atlanta, Georgia 30319.

2.12 **"Fairness Hearing."** The Fairness Hearing shall mean the hearing before the Court relating to final approval of this Agreement and entry of the Final Order, unless otherwise scheduled by the Court without the filing of a motion.

2.13 **"Final Effective Date."** The Final Effective Date shall be thirty (30) days after the Court has entered a Final Order approving this Agreement, and the time to appeal from the Final

---

[1] Social security numbers and last known address information for the Class Members will not be provided to Class Counsel or will be redacted from the Class Member List when provided to Class Counsel. Defense counsel shall provide social security numbers and last known address information for the Class Members directly to the Settlement Administrator only.

Order has expired and no notice of appeal has been filed or, if a notice of appeal is filed, the latest of the following, if applicable, has occurred: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

2.14 **"Final Order" or "Final Judgment."** The Final Order shall mean the order entered by the Court after the Fairness Hearing approving the terms and conditions of this Agreement, distribution of the settlement payments from the Settlement Fund, approval of professional fees and costs, and dismissal of this action.

2.15 **"Named Plaintiffs."** The Named Plaintiffs shall mean Matilde Yamileh Ulloa Gomez, Laura V. Purca, Abigail Guzman Rivas, Kevin Alexis Rivas Cornejo, Yessica Magaly Espinoza Canas, and William Velasquez.

2.16 **"Net Settlement Amount."** The Net Settlement Amount consists of the Total Settlement Amount less all advance payments already made to Class Members and less all payments made pursuant to this Agreement, including Enhancement Awards, attorneys' fees and expenses, and settlement administration costs.

2.17 **"Notice" or "Notices."** Notice or Notices shall mean the Court–approved Notice of Proposed Settlement including notice of an opportunity to object to or opt out of the proposed settlement.

2.18 **"Objector."** An Objector shall mean any Class Member who properly files an objection to this Agreement.

2.19 **"Opt-out Statement."** An Opt-out Statement is a written signed statement that a Class Member has decided to opt-out and not be included in this Agreement. Any Class Member who does not submit an Opt-out Statement waives and releases all wage and hour claims. A Class Member who submits an Opt-out Statement retains any wage and hour claims.

2.20 **"Parties."** The Parties shall refer to Named Plaintiffs, Defendant, and the Class Members collectively.

2.21 **"Preliminary Approval Order."** "Preliminary Approval Order" means the Order entered by the Court" (i) preliminarily approving the terms and conditions of this Agreement ("Preliminary Approval"), and (ii) directing the manner and timing of providing Notices to the Class Members.

2.22 **"Settlement Checks."** The Settlement Checks shall mean the checks issued to Claimants from the Settlement Fund by the Defendant as calculated by Class Counsel in accordance

with this Agreement.

2.23 **"Total Settlement Amount."** The Total Settlement Amount shall mean the maximum aggregate amount that can be paid by Defendant pursuant to this Agreement and includes all Class Member payments; Class representative enhancements; settlement administration costs; and attorneys' fees, costs, and expenses in the sum not to exceed three hundred thousand dollars and zero cents ($300,000.00), not including customary employer's share of payroll taxes (which shall be paid by Defendant), and which amount shall be paid to the Settlement Administrator following the Final Order in accordance with this Agreement.

## 3. INITIAL PROCEDURAL ISSUES

3.1 **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms.

3.2 **Responsibilities of Class Counsel.** Class Counsel shall be responsible for:

   A. preparing the draft of the motion for Preliminary and Final Approval, subject to review and revision by Defense Counsel;

   B. in the unlikely event that a Class Member sends an Opt-out Statement or objection to the settlement to Class Counsel, which were not also sent to the Settlement Administrator, Class Counsel will promptly furnish such to Defendant's Counsel and the Settlement Administrator;

   C. responding to inquiries of the Class Members regarding procedures for filing objections and Opt-out Statements;

   D. submit, with the motion for Final Approval, any Opt-out Statements received during the Opt-out Period (as defined below); and

   E. responding to inquiries from Defense Counsel consistent with the duties specified herein.

3.3 **Responsibilities of Settlement Administrator.** The Parties jointly select **JND Class Action Administration** ("Settlement Administrator"), having evaluated potential settlement administrators based on quality of services and managing costs. The Settlement Administrator shall be responsible for: (i) preparing, printing and disseminating to Class Members the Class Notice; (ii) copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party; (iii) promptly furnishing to counsel for the Parties copies of any Opt-out Statements, objections or other written or electronic communications from Class Members which the Settlement Administrator receives, no later than the first Friday after receipt; (iv) receiving and reviewing the Opt-out Statements submitted by Class Members; (v) keeping track of Opt-out Statements including maintaining the original

mailing envelope in which the request was mailed; (vi) obtaining any necessary tax forms from the Class Members; (vii) calculating the amount of each Claimant's pro-rata share of the Net Settlement Amount, as set forth Section 4.3, below, (viii) mailing the settlement checks to Claimants, (ix) providing a final report detailing the results of the class mailings and participation no later than one (1) business day after the expiration of the Opt-Out Period; and (x) establishing a Qualified Settlement Fund ("QSF") to distribute settlement funds to Claimants and pay all other amounts contemplated by this Settlement Agreement.

3.4  **Notice.** The Notice will inform Class Members about this Settlement and will also advise them of the opportunity to object, and/or to appear at the Fairness Hearing. Within thirty (30) days of the entry of the Preliminary Approval Order by the court, the Settlement Administrator will mail to all Class Members, via First Class United States Mail, the Court–approved Notice of Proposed Settlement. Class Counsel and/or the Settlement Administrator will take all reasonable steps to obtain the correct address of any Class Member for whom a Notice is returned by the post office as undeliverable, including one skip trace, and shall attempt a re-mailing to any Class Member for whom it obtains a more recent address.

3.5  **Preliminary Approval Motion and Proposed Order.**

   A.  Within fifteen (15) days of the date this Agreement is executed, the Parties will submit this executed Agreement to the Court and shall move for Preliminary Approval of this Agreement for purposes of resolving this matter according to the terms of the Agreement.

   B.  The Preliminary Approval Motion also will seek the setting of a date for individuals to opt-out of this Agreement and/or provide objections to this Agreement and for a Fairness Hearing for final approval of the settlement before the Court at the earliest practicable date.

   C.  Plaintiffs' Counsel shall apply to the Court to publish the proposed Notice. The proposed Notice and Preliminary Approval Order approved by the Parties are annexed hereto and made a part of this agreement as Exhibits "1" and "2" respectively.

   D.  The proposed Preliminary Approval Order will seek the setting of the deadlines as set forth in Sections 3.6-3.9 below.

   E.  Class Counsel will inform the Court of the intended process to obtain a "Final Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate, and reasonable; (2) approve the proposed Notice to the Class; (3) incorporate the terms of the Release, as described herein; (4) dismiss the Litigation; and (5) award Class Counsel's fees, expenses and costs.

   F.  The Parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Order, and Final Judgment and Dismissal with

6

prejudice. Any disputes which arise between the Parties related to the Parties' efforts to obtain a Final Order or Final Judgment and Dismissal with prejudice shall be submitted to the Court.

**3.6  Notice to Class.**

    **A.**    Within fifteen (15) days of the Court's entry of the Preliminary Approval Order, Defense Counsel will provide to Class Counsel and to the Settlement Administrator, in electronic form and for all Class Members, the Class Member List. As noted in Section 2.6, Defense Counsel will provide Class Member social security numbers and last known address information only to the Settlement Administrator. All information provided regarding the Class will be treated as confidential information by Class Counsel. Said information will not be used by Class Counsel for any purpose other than to effectuate the terms of settlement.

    **B.**    The Settlement Administrator will send Notice to Class Members within thirty (30) days of the Preliminary Approval Order.

    **C.**    Notices will be mailed via first class mail, and also sent to last known email addresses. The Settlement Administrator will perform one skip-trace on Notices returned undeliverable and will attempt a second mailing with new addresses, if any.

**3.7  Opt-outs.**

    **A.**    Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail a written, signed statement to the Settlement Administrator that states he or she is opting out of the settlement and include his or her name, address, and telephone numbers and statement indicating his or her intention to opt-out such as: "I opt out of the wage and hour settlement." ("Opt-out Statement"). To be effective, an Opt-out Statement must be post-marked or received by the Settlement Administrator and/or Class Counsel within forty-five (45) days after the Notices are mailed.

    **B.**    The end of the time period to opt-out of the settlement ("Opt-out Period") shall be forty-five (45) days after the Notices are mailed. Re-mailed notices will also have a thirty (30) day response period, so long as the total response period does not exceed seventy-five (75) days.

    **C.**    Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Final Judgment in this case, and have any wage and hour claims released and dismissed.

**3.8  Objections to Settlement.**

7

      A.    Only participating Class Members (i.e., those who do not opt-out) will be entitled to object to the settlement.

      B.    Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to Class Counsel via First-Class United States Mail post-marked before the end of the Opt-out Period. The statement must include all reasons for the objection, and any supporting documentation. The statement must also include the name, address, and telephone numbers for the Class Member making the objection. Class Counsel will retain the original and send copies of each objection and supporting documents to Defendant's Counsel by email delivery no later than five (5) days after receipt of the objection.

      C.    An Objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. An Objector is a Class Member and an objection does not constitute the filing of an Opt-out Statement.

**3.9**    **Fairness Hearing and Motion for Final Approval and Dismissal.** The Proposed Preliminary Approval Order shall seek to set a date for the Fairness Hearing which shall be no earlier than ninety (90) days following the date that the Court enters the proposed Preliminary Approval Order. At the Fairness Hearing, the Parties will request that the Court, among other things: (1) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) order the attorneys' fees, expenses and costs to be paid to Class Counsel out of the Settlement Fund; (3) order the dismissal with prejudice of all wage and hour claims by all Class Members who did not opt-out; (4) order entry of Final Judgment in accordance with this Agreement; and (5) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. Class Counsel will file a Motion for Final Approval and Dismissal fifteen (15) days prior to the Fairness Hearing. Class Counsel shall provide a draft of the Motion for Final Approval and Dismissal to Defense Counsel for review and approval at least twenty (20) days prior to the Fairness Hearing.

**3.10**   **Effect of Failure to Grant Final Approval.** In the event the Court fails to enter Final Judgment in accordance with this Agreement, or such Judgment does not become a Final Judgment as defined herein, the Litigation will proceed as if no settlement had been attempted.

### 4. SETTLEMENT TERMS

**4.1**    **Settlement Amount**. The Parties expressly acknowledge that Defendant shall be required to pay the Total Settlement Amount of three hundred thousand dollars and zero cents

($300,000.00), less advance payments already made to Class Members in the aggregate amount of $33,038.46, which shall fully resolve and satisfy any claim for (i) attorneys' fees, expenses and costs approved by the Court; (ii) fees to the Settlement Administrator; (iii) all amounts to be paid to all Claimants for releasing claims as set forth herein; and (iv) any Court-approved Enhancement Awards. Defendant shall pay the Total Settlement Amount to the Settlement Administrator, to be placed in the QSF, within fourteen (14) days after the Final Effective Date. The portion of the Total Settlement Amount held by the Settlement Administrator at any given time shall be referred to herein as the "Settlement Fund."

**4.2** **Enhancement Award for Named Plaintiffs.** Class Counsel shall seek Court Approval of the payment of an Enhancement Award of sixty thousand dollars and zero cents ($60,000.00) to the Named Plaintiffs in consideration for work performed on behalf of the Class. The Enhancement Award shall be paid out from the Total Settlement Amount and shall be allocated equally among the six Named Plaintiffs. Defendant shall not comment on this application. The substance of Named Plaintiffs' application for an Enhancement Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for an Enhancement Award shall not terminate this Agreement or otherwise affect entry of the Court's Final Order. In exchange for receiving an Enhancement Award, the Named Plaintiffs will provide a full, general release of all claims (including known and unknown claims) against Defendant and its parents, subsidiaries, and affiliates.

**4.3** **Settlement Allocation.** The Net Settlement Amount will be allocated to the Class Members according to the following:

- The Class Member's individual settlement share will be based on the Class Member's hours and times worked during the Class Period from June 1, 2017 to August 31, 2019. Specifically, a Class Member will be awarded 60 minutes of his or her regular hourly wage per Night Shift worked in a given day during the Class Period, and 5.4 minutes of his or her regular hourly wage per Day Shift worked in a given day, including any overtime compensation owed if the aggregate number of hours worked by a Class Member (including the additional awarded time) exceeds forty hours in a given week during the Class Period. The overtime compensation will be calculated by multiplying the individual Class Member's hourly wage rate by 1.5 times the number of hours over forty.

- For purposes of the Settlement Allocation, Night Shift is any hours worked by a Class Member between 11:00 p.m. to 12:30 a.m. during the Class Period, and Day Shift is any hours worked by a Class Member between 10:46 a.m. to 10:59 p.m.

The settlement allocation among Class Members has been determined at the discretion of Class Counsel, subject to Court approval, and was based upon the dates and shifts worked by the Class Members during the Class Period.

9

4.4 **Advance Payments to Class Members.** The Parties expressly agree that twenty-eight (28) Class Members have received a portion of their Class Member settlement allocation, consisting of payments in the aggregate amount of thirty-three thousand thirty-eight dollars and forty-six cents ($33,038.46). The twenty-eight (28) Class Members shall have their advance payment deducted from their settlement allocation, and Defendant will not be responsible for paying these advance payments as part of the Total Settlement Fund.

4.5 **Mailing of Settlement Checks.** The Settlement Checks will be mailed to the Named Plaintiffs and Claimants by the Settlement Administrator thirty-five (35) days after the Final Effective Date. The check for approved attorneys' fees and expenses to Class Counsel shall be mailed by the Settlement Administrator to Class Counsel within thirty-five (35) days after the Final Effective Date. The check for approved Enhancement Award shall be mailed by the Settlement Administrator to the Named Plaintiffs within thirty-five (35) days after the Final Effective Date. Class Members will have ninety (90) days to cash their Settlement Checks.

4.6 **Attorneys' Fees and Costs.** At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees in the amount of one hundred five thousand dollars and zero cents ($105,000.00), or 35% of the Total Settlement Amount, and costs not to exceed nineteen thousand dollars and zero cents ($19,000.00), which includes reimbursement of actual litigation expenses and costs, including settlement administration costs. These fees shall be paid out of the Total Settlement Amount. Defendant will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

4.7 **Reversion.** Any unclaimed amounts remaining in the Settlement Fund six (6) months after the initial mailing of the Settlement Checks (whether because a participating Class Member failed to timely cash their check or otherwise) shall be returned to Defendant.

4.8 **Tax Characterization.**

A. Except as set forth below, settlement payments to the Class Members will be allocated as follows: 50% of all payments calculated shall be deemed as back wages for time worked and/or wage income. All wage payments shall be subject to all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") on an IRS Form W-2. The remaining 50% of all payments to Class Members shall be treated as 1099 income, constituting both interest and liquidated damages.

B. Payments of attorneys' fees and costs shall be made without any withholdings. Class Counsel must provide a Form W-9 to the Settlement Administrator. Class Counsel will receive a Form 1099 for this payment.

C. Enhancement Awards to the Named Plaintiffs will be considered 1099 non-wage income. The Named Plaintiffs receiving an Enhancement Award must provide a

10

Form W-9 to the Settlement Administrator.

**4.9** **Participation.** The Parties expressly agree that, in the event the Class Members opting out of the settlement equal or exceeds ten percent (10%) of the total number of Class Members, or if the potential individual Settlement Checks of the Class Members opting out equal or exceed ten percent (10%) of the Net Settlement Amount, then Defendant in its sole discretion may choose to nullify the settlement and this Agreement. If the settlement and this Agreement are nullified for any reason, then the Total Settlement Amount will be returned to Defendant in its entirety.

**4.10** **Hold Harmless.** Named Plaintiffs shall be responsible for the payment of any and all local, state, and/or federal taxes which may be attributable to the payment(s) described herein and indemnify and hold Defendant harmless from any and all tax consequences, including interest and/or penalties, arising out of payment(s) made out of the Settlement Fund. The Parties acknowledge that no representations have been or are made herein by or to any signatory to this Agreement regarding the tax consequences of this Agreement.

**4.11** **Reduction of Enhancement Award, Attorney Fees or Costs.** In the event that Plaintiffs' Enhancement Award and/or Plaintiffs' requested attorney fees and costs is reduced by the Court, Plaintiffs shall have the opportunity to appeal such reduction, if permitted by applicable law or rule. After any appeal on such reduction is resolved, any remaining funds caused by the reduction shall be redistributed to the Class.

## 5. RELEASE

**5.1** **Release of Claims.** Upon the Final Order, and except as to such rights or claims as may be specifically created by this Agreement, each Class Member who does not opt-out of this Agreement, on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys fully releases and discharges Defendant, Defendant's present and former parent companies, subsidiaries, related or affiliated companies, and their respective shareholders, officers, directors, employees, members, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, customers, clients, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them (collectively, the "Releasees"), from any and all claims for any wage and hour violations under the Maryland Wage and Hour Law (MWHL), Maryland Wage Payment Collection Law (MWPCL), and any other applicable federal, state or local wage and hour law, including but not limited to, any and all claims for unpaid wages, overtime pay, failure to maintain and furnish employees with proper wage records, claims to recover claims, meal break claims, and all other claims that were or could have been asserted in the Litigation, whether known or unknown, under federal, state and/or local wage and hour laws (including but not limited to Maryland wage laws or the Fair Labor Standards Act) (collectively referred to herein as "wage and hour claims"), through the Final Effective Date of this Agreement. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees' and costs. In addition, each Claimant

11

specifically and affirmatively releases Releasees from not only those claims within the scope of the release against the Released Parties which they know about, but also those claims about which they do not know.

5.2   Each Claimant forever and fully releases Defendant from all wage and hour claims during the Class Period that were or could have been asserted in this Litigation.

5.3   By operation of the entry of the Judgment and Final Order, and except as to such rights or claims as may be created by this Agreement each Claimant forever and fully releases Defendant from all released claims as detailed in sections 5.1 and 5.2 above.

5.4   **No Assignment.** Class Counsel and Named Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

5.5   **Non-Admission of Liability.** By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Named Plaintiffs and/or the Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendant in no way admits to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Named Plaintiffs and the Class. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendant or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; and (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendant in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

5.6   Except as provided in this Agreement, upon payment of the attorneys' fees, expenses, and costs approved by the Court, Class Counsel, the Named Plaintiffs, and the Class Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she, or they may have against Defendant for attorneys' fees or costs associated with Plaintiffs' Counsel's representation of the Class. Plaintiffs' Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses, and costs associated with Plaintiffs' Counsel's representation in the Litigation.

### 6.   INTERPRETATION AND ENFORCEMENT

6.1 **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

6.2 **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

6.3 **Confidentiality.** The Parties will maintain the confidentiality of this Agreement and the details of this resolution until the Preliminary Approval Motion is filed.

6.4 **No Publicity.** Named Plaintiffs and Class Counsel agree that they will not issue, send or post, or cause to be issued, sent or posted, any press release, posting, e-mail, or other verbal or written communication to any electronic, print, or digital media, blogs, or social networking sites, including but not limited to Facebook, SnapChat, Instagram, LinkedIn, TikTok, and Twitter, (collectively, the "Media") regarding the Litigation, the Parties' settlement discussions, the existence and/or terms of this Agreement, and/or the facts and events leading up to same. If contacted by any member of the Media or any other individuals through any of the Media, Named Plaintiffs and/or Class Counsel will simply state that the Litigation has been resolved and will provide no other comment whatsoever. In the event any Named Plaintiffs violate this section, and Defendant proves such violation at trial, Defendant shall be entitled to: (1) injunctive relief enforcing this Agreement notwithstanding the foregoing; (2) the return of any payments made to the Named Plaintiffs, (3) Defendant's attorneys' fees and costs incurred in prosecuting any action as a result of the breach of this section; and (4) any other remedies provided by law or equity. Notwithstanding the terms of this section, Defendant shall be free to make whatever disclosures it deems appropriate with respect to this Litigation.

6.5 **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiffs and Class, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

6.6 **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

6.7 **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

6.8 **Construction.** The determination of the terms and conditions of this Agreement has been

13

by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

6.9 **Severability.** If any provision of this Agreement, other than the release of claims set forth in Section 5, is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement will remain in full force and effect. If the release of claims in Section 5 is found to be void, voidable, unlawful, or unenforceable, Defendant's obligations herein, including but not limited to their obligation to fund the settlement as set forth in Section 4.1, shall be entirely null, void and of no effect.

6.10 **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Maryland, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

6.11 **Continuing Jurisdiction.** The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

6.12 **Waivers, etc. to Be in Writing.** No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

6.13 **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution and final approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

6.14 **Binding Authority of Plaintiffs' Counsel.** Plaintiffs' Counsel hereby represents that they are fully authorized to bind the Named Plaintiffs to the terms and conditions hereof and that they have retainer agreements and/or authorizations to execute this Agreement on the Named Plaintiffs' behalf.

6.15 **Signatures.** This Agreement is valid and binding if signed by the Parties' authorized representatives.

6.16 **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its

counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**[Signatures on Following Page.]**

**WE AGREE TO THESE TERMS:**

Dated: August 3rd, 2020.

By: _____
Michael K. Amster
**Zipin, Amster & Greenberg, LLC**
*Attorneys for Plaintiffs*
8757 Georgia Avenue Suite 400
Silver Springs, Maryland 20910

Dated: August 3, 2020, 2020.

By: *Elizabeth Bulat Turner*
Elizabeth Bulat Turner
Hee Won Choi
**Martenson Hasbrouck & Simon, LLP**
*Attorney for Defendant*
2573 Apple Valley Road NE
Atlanta, Georgia 303019

_____
Matilde Ulloa Gomez (Aug 3, 2020 12:08 EDT)
Matilde Yamileh Ulloa Gomez
Plaintiff

*Michael McGawn*
Michael McGawn (Aug 3, 2020 10:43 PDT)
Michael M. McGawn
Deputy General Counsel

For and on behalf of Defendant Chipotle Services, LLC

_____
Laura Purca (Aug 3, 2020 10:36 EDT)
Laura V. Purca
Plaintiff

_____
Abigail Guzman Rivas (Jul 31, 2020 11:03 EDT)
Abigail Guzman Rivas
Plaintiff

_____
Kevin Rivas (Aug 1, 2020 08:44 EDT)
Kevin Alexis Rivas Cornejo
Plaintiff

_____
Yessica espinoza (Aug 3, 2020 11:50 EDT)
Yessica Magaly Espinoza Canas
Plaintiff

_____
William Velasquez (Jul 31, 2020 11:28 EDT)
William Velasquez
Plaintiff

16